IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-CR-86

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| JOHN HENRY MOORE | ) | |
| | ) | |

**THIS MATTER** is before the Court upon the defendant's pro se[1] motions to suppress challenging state search warrants for his apartment and DNA, (Doc. Nos. 83, 89, 156, 175), the government's responses, (Doc. Nos. 90, 92, 161, 186), and related pleadings. The Court denied the motions orally at the pretrial conference held on October 13, 2022, and writes to give its rationale.

I.  BACKGROUND

The defendant is charged with robbing a Spectrum office on South Boulevard, Charlotte, North Carolina, on December 1, 2018, in violation of 18 U.S.C. § 1951, (Count One), and brandishing a firearm during that alleged crime of violence, in violation of 18 U.S.C. § 924(c), (Count Two). He is also charged with robbing a Publix grocery store in the same shopping area on December 10, 2018, in violation of 18 U.S.C. § 1951, (Count Three). Finally, the defendant is charged with possessing a Glock pistol on December 12, 2018, knowing he had been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), (Count Four). (Doc. No. 18: Superseding Indictment).

---

[1] The defendant waived his right to counsel on January 19, 2021. (Doc. No. 73).

Some evidence in the case resulted from the execution of state search warrants on December 12, 2018, for the defendant's DNA and his apartment at 523 Brookhill Road, Charlotte, North Carolina. (Doc. Nos. 186-1, 186-2). The defendant alleges that detectives withheld information and provided false information in the supporting affidavits; that officers searched his apartment prior to the issuance of a warrant; that the warrants failed to describe particularly the person and property to be searched; and that the warrants were fabricated by detectives and not issued by magistrates.

II. DISCUSSION

A. Standard of Review

Issues raised by the defendant involve the validity of the search warrants issued by the state magistrate; therefore, a hearing is not necessary. "Whether probable cause for a search exists is a 'practical, common-sense' question, asking whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Blakeney, 949 F.3d 851, 859 (4th Cir. 2020) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A magistrate's determination of probable cause is given "'great deference,'" and a reviewing court asks "only 'whether the judicial officer had a "substantial basis" for finding probable cause.'" Id. (quoting Gates, 462 U.S. at 236-38. Additionally, a court may properly rely on an experienced officer's assertion, based on training and experience, to tie evidence of criminal activity to a suspect's residence. United States v. Williams, 548 F.3d 311, 320 (4th Cir. 2008).

2

B.  <u>Franks</u> Hearing and Substantial Basis

The defendant seeks a <u>Franks</u> hearing claiming police withheld information from and gave false information to the state magistrate who issued search warrants for his apartment and a DNA sample. (Doc. No. 83: Motion to Suppress). To obtain a <u>Franks</u> hearing a defendant must make a substantial preliminary showing that (1) material facts were omitted in the warrant affidavit; (2) the warrant affiant omitted the material facts intentionally or with reckless disregard for the truth; and (3) the omitted facts were necessary to support a finding of probable cause. <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (2009). As to alleged false statements, there must be evidence showing that the statements at issue are objectively false. <u>United States v. Moody</u>, 931 F.3d 366, 370 (4th Cir. 2019).

1.  Search Warrant for Apartment

The defendant asserts that Det. Blalock withheld information that the robber wore a mask and discarded it in the Lowe's parking lot; that the officers who arrested him seized items from his apartment; and that he was in custody two hours prior to the issuance of the search warrant. The defendant also asserts Det. Blalock made materially false statements regarding the robber running across to the Lowe's when store video reportedly shows a person exiting a car and going into Lowe's.

The search warrant affidavit states that video evidence shows the same person robbed the Spectrum store on December 1 and the Publix on December 10.

3

(Doc. No. 186-2 at 4). After the second robbery, the suspect ran across the street into another business where he was recognized as a former employee. (Id.). Thus, the detective concluded there was probable cause to believe the defendant committed both robberies and that evidence of the robbery, including firearms, stolen property, clothing worn during the robbery, and personal cellular devices containing evidence may be located at his apartment. (Id.).

The defendant is not entitled to a Franks hearing because the allegedly omitted information would not have defeated probable cause for the issuance of the search warrant. In fact, that the suspect wore a mask and discarded it in the Lowe's parking lot would have made it easier for employees there to identify him. The defendant's contention that the affidavit failed to inform the magistrate the defendant was already in custody is false; the affidavit recites that the defendant was arrested at his apartment that morning. (Doc. No. 186-2 at 4). The items allegedly seized by arresting officers of a green jacket, iPhone, and $386 were not necessary to establish probable cause. Finally, the defendant's interpretation of store video as showing a person exiting a car and entering Lowe's where the Publix manager to told police he followed the suspect on foot and watched him enter the store is a factual dispute that does not establish that the detective made objectively false statements in the affidavit.

    2.     Search Warrant for DNA

The defendant claims Det. Smith withheld the same information and falsely

4

stated the Publix manager watched the suspect run to the Lowe's on foot and enter. For the reasons stated above, the defendant is not entitled to a Franks hearing on those assertions. The defendant relies on a police report to claim the Publix manager really said the suspect ran towards Iverson Way, which he contends is the opposite direction from Lowe's. The Court takes judicial notice that Iverson Way is across the street from Publix and borders the Lowe's parking lot. Therefore, the manager's written statement does not establish that Det. Smith provided objectively false information in support of the search warrant when he wrote that the manager watched the suspect run to Lowe's across the street. (Doc. No. 186-1 at 3). Finally, the defendant asserts Det. Smith lied in stating the suspect had been wearing the same clothing at Lowe's as during the Publix robbery. (Id.). The defendant claims video shows him arriving at Lowe's in different clothing. However, Det. Smith notes the video shows the suspect made attempts to change clothing. (Id.). Thus, the defendant has not made a substantial preliminary showing that the statement was objectively false.

Based on the information in each affidavit, the state magistrate had a substantial basis to find probable cause that the defendant committed the robberies and that incriminating evidence would be found at his apartment.

C. Safety Sweep and Inevitable Discovery

The defendant also seeks suppression of items in his apartment based on a claim that the officers who arrested him unlawfully searched his apartment before

the search warrant was issued. (Doc. No. 89: Motion to Suppress). He asserts that officers pulled him out of the apartment and secured him, but then entered the apartment, going through every room and closet. The defendant was dressed in a t-shirt, shorts, socks, and flip flops, and the officers put on him a green jacket in which they had placed an iPhone and $386 cash prior to transporting him.[2] He complains that those items, which he did not request for his comfort, were later seized when he was booked at the jail. He also claims a due process violation based on the officers' allegedly turning off their body-worn cameras (BWC) while searching the apartment.

The government asserts that because the defendant was arrested in the doorway of the apartment, police were justified in performing a limited sweep of the places another person could be hiding in the apartment, which was captured on BWC. (Doc. No. 92: Response). As stated in Maryland v. Buie, 494 U.S. 325, 327 (1990), "[a] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."

The government argues that the officers acted lawfully and that all the evidence in the apartment, including the clothing the defendant wore to booking,

---

[2] The temperature at 7:52 am on December 12, 2018, was 30 degrees. ttps://www.wunderground.com/history/daily/KCLT/date/2018-12-12

would have been inevitably discovered during the execution of the search warrant. No information from the arrest was communicated to the state magistrate; therefore, the search warrant for the apartment was not "fruit of the poisonous tree." The areas of the apartment allegedly searched by the arrest team were within the scope of the warrant sought by other officers. Thus, the evidence from the apartment will not be suppressed because it would have been inevitably discovered during the lawful execution of the search warrant.[3] <u>Nix v. Williams</u>, 467 U.S. 431, 448 (1984); <u>United States v. Alston</u>, 941 F.3d 132, 138 (4th Cir. 2019) (citing <u>United States v. Allen</u>, 159 F.3d 832, 840 (4th Cir. 1998)).

D.  Particularity

The defendant further challenges the DNA and apartment search warrants claiming each fails to describe with particularity the person and property to be seized. (Doc. No. 156: Supplemental Motion to Suppress). The government responds that each warrant incorporates its underlying application, which sufficiently describes the person and property to be seized. (Doc. No. 161).

The Fourth Circuit "recently made clear that 'a warrant may satisfy the particularity requirement either by identifying the items to be seized by reference to a suspected criminal offense *or* by describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and

---

[3]  This finding renders the defendant's due process claim about the officers' alleged violation of BWC policy moot.

7

seize.'" United States v. Cobb, 970 F.3d 319, 329 (4th Cir. 2020) (quoting United States v. Blakeney, 949 F.3d 851, 863 (4th Cir. 2020) (emphasis in original)). Additionally, the particularity requirement may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail. United States v. Hurwitz, 459 F.3d 463, 470 (4th Cir. 2006).

Here, both affidavits describe the armed robbery of the Spectrum and Publix stores. (Doc. No. 186-1 at 3; Doc. No. 186-2 at 4). The DNA search warrant refers to the "person … to be searched" as "John Henry Moore 9/27/63." ((Doc. No. 186-1 at 3). The apartment search warrant describes "weapons, stolen property, and clothing worn during robberies and cellular devices belonging to John Henry Moore Jr. 9/27/1963," as evidence of "Robbery with a Dangerous Weapon," likely located at his apartment "523 Brookhill Rd. Charlotte, NC 28203." (Doc. No. 186-2 at 1). The defendant argues that the list of items to be seized should have been more specific, but the Court is required to "construe search warrants in a commonsense and realistic manner, avoiding a hypertechnical reading of their terms." Blakeney, 949 F.3d at 862. The language in each warrant was sufficient to direct the officers' search and seizure of the defendant's DNA and items relevant to the robberies if found in his apartment.

E.   Alleged Fabrication

Finally, the defendant challenges the state search warrants arguing that alleged discrepancies between hand-written sections of copies shows that

8

magistrates did not actually issue them. (Doc. No. 175: Motion in Limine). The government explains the typical process for obtaining a state search warrant:

> When seeking a search warrant issued by the state of North Carolina, officers with the Charlotte Mecklenburg Police Department ("CMPD") typically make multiple copies of the warrant to use for various purposes throughout the search process. One copy of the warrant is maintained by the investigators for the case file, one copy is left at the location of the search, one copy is maintained by the magistrate that signed the warrant, and an official warrant copy is filed with the Mecklenburg County clerk's office. Portions of the warrants are sometimes copied by hand.

(Doc. No. 186: Response at 1). The government filed certified copies of the apartment and DNA search warrants on record at the county clerk's office, (Doc. Nos. 186-1, 186-2), as well as provided in discovery copies from the investigator's file.

First, the defendant claims that the copy of the search warrant left at his apartment (Doc. No. 175 at 10: Motion Exhibit 1) is different from the copy of the search warrant provided in discovery (Doc. No. 175 at 12-16: Motion Exhibit 2). The defendant points to the use of a different name and address in Exhibits 1 and 2. This difference can be explained by the officer handwriting an inventory sheet left at the apartment with "John Moore Jr." and "213 Brookhill Dr.," (Doc. No. 175 at 10), and handwriting another inventory sheet with "John Henry Moore Jr. 523 Brookhill Dr." returned to the magistrate, (Doc. No. 186-2 at 6). This issue is without merit because each handwritten inventory sheet lists the same eight objects

9

seized from the defendant's apartment.[4]

Next, the defendant highlights that the copy of the DNA inventory sheet from the clerk's office, (Doc. No. 175 at 21: Motion Exhibit 4), is different from the one provided in discovery, (Doc. No. 175 at 33: Motion Exhibit 7). There is a variation in the magistrate's signature and date boxes, which is consistent with the magistrate judge physically signing multiple copies of the inventory sheet. Again, both inventory sheets state that a buccal swab was taken from "John Henry Moore 9/27/1963." (Id.). Accordingly, this issue is without merit.

The defendant posits that it is unlikely that the magistrate could issue three search warrants all at 8:51 am and that the detective could return them all at 1:55 pm. (Doc. No. 175: Motion at 2). Similarly, the defendant challenges the DNA search warrant issued at 10:02 am and returned at 2:17 pm. (Id. at 3). Significantly, the defendant does not allege that any of the material content in the copies of the apartment warrant and DNA warrant is different. Thus, the process of obtaining, executing, and returning multiple copies of the same warrant is irrelevant.

Finally, the defendant asserts without any foundation that the detectives used an electronic cut-and-paste tool to preprint the magistrates' signatures. (Doc.

---

[4] Those items are: black Nike zip up hoodie, black boots, Glock 20 Gen 4 10 mm (damage serial #), camo toboggan, Apple iPhone, Samsung cellphone, cardboard box (gift cards), and large bag of marijuana. (Compare Doc. No. 175 at 10 with Doc. No. 186-2 at 6).

10

No. 175: Motion at 5-6). Given the natural variations in the signatures on multiple copies of the warrants, there is no reason to believe they were reproduced and affixed by the detectives. Accordingly, there is no credible basis to question the authenticity of the state search warrants. See Nardea v. Sessions, 876 F.3d 675, 680 (4th Cir. 2017) (presumption of regularity must be overcome with clear and convincing evidence).

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the defendant's motions to suppress, (Doc. Nos. 83, 89, 156, 175), are **DENIED**.

The Clerk is directed to certify copies of this order to the defendant and to the United States Attorney.

Signed: November 1, 2022

_____
Robert J. Conrad, Jr.
United States District Judge